Alright, this is case number 4-14-0405, Sierra Club v. The Office of Mines and Minerals et al. For the appellant, we have Attorney Rohan. Okay? For the appellee, Attorney Hardy and Attorney Manning, are you both arguing or just one? Yes, we are. Alright, and have you told the clerk how you're splitting your time? Yes. Okay, perfect. Alright, Mr. Rohan, you may proceed. Good afternoon, Your Honor. Counsel. My name is Mark Rohan. I represent the plaintiff, Sierra Club v. The Office of Mines and Minerals et al. And I'm appearing under an Illinois Rule 711 license. Supervised by Mark Manning. Alright, great. And we're here today because the trial court made three errors. Three legal errors in discussing the plaintiff's intent below. First, it applied the wrong legal standard for a stand-in. I think I'm pregnant at this point, so I'm taking the rear. And second, as a result of that error, the plaintiff failed to separately assess the plaintiff's different causes of action under the Natural Resource Protection Act, the Lawsuit for Oral Abuse, and due process. And then finally, the trial court wrongly held the plaintiff to not be parties to the administrative proceedings with respect to the laws of mines and minerals. And the Illinois Supreme Court in the rear stated the general rule of standing when it said that the only requirement in Illinois is inter-impact through legal impact measures. And the plaintiffs have met that here. The mining operation will cause air and noise pollution as a result of blasting at the mining site. And that blasting will also cause dispersed silica dust on the property, which is a carcinogenic. And in addition to other things, it will also cause increased truck traffic to and from the mining site. And each of these harms have been held by the plaintiffs in this case. The plaintiffs live adjacent to the mining site, have residence adjacent to the mining site. They recreate at Starbucks Bay Park, which is also adjacent to the mining site. And they operate businesses that depend on tourism from the mining site. And moreover, that's held in specific here because of the silica dust and the carcinogenic that we disperse on the property. Now, the sole grounds for dismissal in the trial court was the plaintiffs were not parties to the administrative proceedings. And not only is this in conflict with the Supreme Court's precedent in the rear, but it's also in conflict with how the court has handled the party statute in the past. Well, counsel, the matter before the appellate court, before the trial court, and now before us, this is pursuant to the administrative review law. And that seems to provide its own definition of party. Greer didn't involve the administrative review law, did it? Well, Greer did not involve the administrative review law. Why is the language used there applicable to this proceeding? Well, because the plaintiffs have more than just one claim here. They do not just have the contracts under the administrative review law. In fact, there are multiple points of action pursuant to different statute sentences. This wasn't an administrative review law that was before the circuit court? Again, it was before the circuit court with respect to the plaintiffs' claim under the Service Mining Act that the administrative review law was used. But it is not with respect to the separate issue of whether a mandamus is proper under the Natural Protection Act, or whether the plaintiffs are due search for RORI, or whether due process protections are properly enforced. So really, there are four separate points of action. Only one of them requires the party statute. Naturally, this court's precedent in Kent Golden is a good illustration of how that was handled here. In that case, it wasn't an administrative review law case. And in that case, the court found the plaintiffs not a party. And if the trial court was right and the defendants were right, then that would have been the end of the analysis. But it wasn't, crucially. The court then went on to discuss their other claims, similar to here, but multiple claims under a different statute. So this court has handled the party statute department correctly in the past, and it should do so here as well. Were we right to do it in Kent Golden? Yes, Your Honor, because, crucially, if you look to where the party statute department comes from, it is directly from the administrative review law. And, for example, the Plaintiff's pineapple claim, the Natural Protection Act claim, does not arise from the Service Mining Act. It does not include the administrative review law requirement that they be parties. And so we can move to that now, actually. In Section 17 of the Natural Protection Act sets out its own requirements for who may seek mandamus. And it specifically states that affected persons may seek mandamus to entail an environmental complication. And the plaintiffs are affected persons here, so they are among the class that may seek mandamus. So they reside in this park, and they use it frequently and will use it frequently in the future for recreation. And that means that because their use of the park is affected, that they are affected persons who may seek mandamus. And we can look to the case of McHenry County Defendants to see a similar situation where a person who had an interest in a natural area was allowed to obtain this as a grant of mandamus, was considered an affected person in that case. So, truly, the plaintiffs here are actually even closer and more affected than the plaintiffs in that case. In that case, the natural area was at least 1,000 feet away from the subject property. In this case, not only the plaintiffs' residences, but also Starbrook State Park is directly adjacent to the mining center. So they should also be considered affected persons here who are able to seek mandamus. If your honors have no further questions about the Natural Area Protection Act, I can move to the Plaintiffs' Claims under the Service Mining Act. Under the Service Mining Act, it adopts the Administrative Review Law, which grants review to parties of record with rights, duties, and privileges affected by the administrative decision. And although the trial court found the plaintiffs were not parties, the plaintiffs truly are parties in this case, if we interpret the law correctly. So, neither the Service Mining Act nor the Administrative Review Law defines what the term party means. Neither of them contains the definition of that term. So using the primary canon of statutory interpretation, then, we have to apply the plain meaning of the term party here. And this court has held that one way of defining the plain meaning of the term is to look at dictionary definitions. And if we do that, we can see that the plain meaning of the term, to a common understanding, is a person who advocates in a proceeding, or participates in a proceeding, advocates for interest in the matter. And that's exactly what the plaintiffs did here. They sent letters to the agency during the administrative proceedings, detailing their concerns and their interests in the matter. And if we look further to the purposes of the Service Mining Act and its substantive requirements, we can see that these types of lawsuits are well within the purpose and the meaning of the law. So the purposes section states that it is to protect against injuries. Let me ask you about one other thing. You had mentioned in response to my earlier question about the other mandamus and certiorari, other causes of action. If the Administrative Review Law is applicable, hasn't that statute eliminated other possible remedies so that you can't bring these other actions that you claim you have to be part of the administrative review matter, or you can't do anything? Well, the plaintiff's position is that it only, first of all, with respect to the type of certiorari claim, that it only eliminates remedies for parties of record, or parties of the administrative proceedings. But with respect to the Natural Area Protection Act claim, that simply arrives under a different statute. It's just not concerned with the substance of the service mining permit, like the other claim. So the plaintiff's position is that when challenging the substance of the permit, as the plaintiff has here, they have to be parties to the administrative review, if they're parties to the administrative review. But they can still bring a separate INAPA claim, because that contains a separate, more narrow requirement that they can be infected persons. So that really, because the specific term is more general, and because it's in a separate statute, should be the applicable standard for whom it's intended. What case law stands for the proposition that you can, without using the Administrative Review Law, when an administrative review action is pending before the circuit court, seek to join that proceeding by bringing other causes of action? Well, the plaintiffs are not seeking to join these actions together. Well, assuming for the moment that we disagree with your claim that you're parties under the Administrative Review Law. My understanding, and possibly it's incorrect from what you just said, is that you can seek to join in this administrative review process by bringing these other causes of action, I don't think that's, if I understand, I don't think that's quite what I meant to say. What I meant to say is that, let's, if we again assume that the plaintiff is not parties here, then they can still pursue the Natural Area Protection Act, the mandamus under the Natural Area Protection Act, and not, then they would not be able to seek review under the ARL. They would not be able to somehow use the Natural Area Protection Act. So your position is you can seek a mandamus relief independent of the Administrative Review Act? Yes, Your Honor. But you sought to join this action, did you not? I'm not sure I understand what you mean by join. Well, you, the plaintiffs here sought administrative review. Yes, Your Honor. And so you wanted to do, pursue other counts of your complaint? Yes, Your Honor. Okay, go ahead. Yes, so, yeah, if, let's assume that the plaintiff's party status argument fell through and they did not seek ARL, the plaintiff's position is that not everything hangs on that, that those don't hang together, that one can fall out, and that the price is spent. So again, if we look to the purposes of the Surface Mining Act, it says that it's to protect injurious effects to persons, wildlife, and the environment. And that actually translates into the substance of the statute. If you look at the factors that the agency must consider under Section 4B of the statute, they include things like air pollution, water pollution, noise pollution, and land use, land values, and local factors. So these are all things that the plaintiffs are seeking to indicate here. So within, even looking to the statute beyond simply dictionary definitions, that is not all the plaintiffs rely on to establish the plaintiff's party. They actually rely on the entire statute hanging together, indicating that these types of proceedings by persons who are intimately affected would be well within the plaintiff's party. It seems like you're referring to a party, but the terminology is parties of record. Yes, sir. Your clients weren't parties of record. Well, the plaintiffs are certainly in the record filed with the trial court here. They sent letters to the agency, and the responses that they received were included in the record. So they're within the record as far as that is concerned. And there really is, as far as- Is that parties of record? Is that what you're telling us, that that's what it means, because there's some reference to them in the record? Well, it's not merely that there's some reference to them, but that their particular concerns were responded to in the record. So if someone writes a letter to the agency and gets a response, they're now parties of record? The plaintiff's position, as long as they participate in the proceedings and advocate for their interests, that they are parties, because that's the natural term. And it's notable that in cases like Kent-Golden, the courts have analyzed the word party in isolation from of record. So party of record can be broken down into the first party of record and the second. Are you in the record that we have to look at? And crucially, following a more formalist and legal definition of party of record here doesn't quite work, because there's no case caption to look at. Is it so-and-so and so-and-so on the other side? So the more natural and plain meaning of party, which includes persons who participate and advocate for their interests, really is proper here in that context. So I'd like to address, which I think is another concern, a concern that arose in the trial court, that this meaning of party was too broad and included too many people who might be able to come to court. And I think that that concern is really unfounded, because party is not the only requirement that they seek review. Not all parties in that plain meaning may seek review. First of all, as we've noted, you have to be a record, you have to have participated, and you have to have provided evidence to the agency. But moreover, you have to have rights, duties, and privileges. That's the other half of the test here. And this has been used in many instances to limit the number of people who may seek review. I am casting the Civil Service Commission, for example, a Supreme Court held that mere taxpayers who have an undifferentiated interest in the general public cannot seek review. And that certainly excludes many, many people, but does not exclude, like, here, because, again, they are intimately affected. They live next to the line, they frequently use Rock Bay Park, their property values will suffer, as well as their quality of life. And then if you look to the Supreme Court case in Landmarks Preservation Council 2, there, the Supreme Court said that a person with a mere special interest in the matter, there it was persons who merely liked looking at a building that had no right of use. Let me ask you this, counsel, if my understanding is correct in what you're seeking here. You want to be a participant at the trial level, and you want the trial court to receive evidence and entertain arguments and make rulings with regard to the appropriateness of the request that was made to the Office of Mines and Minerals for this mining of sand in LaSalle County? Well, the plaintiffs have alleged procedural defects. That's the mine. That's the statutory factors that have to be followed, and the relevant experts that have to be consulted. They were not followed and not consulted. So they alleged that was a result of a misdemeanor that harms them. So that's what the plaintiffs are going after in the trial court. What was the problem before the agency specifically? Who wasn't consulted, or what problems arose there? Well, first of all, if you look to the permit review document, several of the factors are completely one-sided discussion of the issue. For example, in local tax base, the discussion of local tax base, it only discusses possible benefits of the local tax base. But this will someday be, because it's an industrial mining site now, there will be benefits. It doesn't discuss any of the harms. Any of the diminution of the plaintiff. When you say it doesn't discuss, the report from the agency doesn't discuss? The permit review document, yes. So in the record file. And who prepared that document? The agency prepared that document. Was this what the people you represent sent to the agency their concerns about, to which there was a response made? Yes, they sent concerns. If you look to the plaintiff's letters, they sent concerns going through each of these factors, noting the negative aspects that will happen as a result of the letter. But who's supposed to be deciding this? In other words, isn't this agency supposed to be making these calls and set up by state government for that purpose? And I guess, since they responded to your concerns, they had a chance to consider it. Maybe they weren't persuaded. So is the trial court now supposed to be second-guessing the agency regarding whether they did it right? No, Your Honor, that's not what the plaintiff did. What are you seeking to do? The plaintiff is seeking to show by the permit review document that these were not considered. That because they're not part of this record, that they really are not part of this. But I thought you just were telling us they were considered, because you told them. You provided this information. You provided, hey, you're wrong in this, and here's why. They definitely did receive a letter of note that the plaintiff sent. They responded to it with a fairly plain statement that all of the factors, short and long-term, had been considered. There is no thorough, there is no response in substance to what happened. But moreover, That sounds to me like this is an argument we hear in other contexts all the time. They didn't consider it because they didn't agree with it. Couldn't they have considered it and disagreed with it? Yes, but they were not considered in the document. They were not, in what was filed in the court, there's no indication that consideration was taken. And moreover, just with respect to also the consultations that have to occur, there's no indication in the record whatsoever that an economist, for example, was consulted. And it states specifically in the law that an economist shall be consulted, using the mandatory language, shall, for consultations. That's not a mere matter of whether it was wisely granted. Did you call that to their attention, too? Well, no, Your Honor, but it is required by the law. So it wasn't called to their attention that they must consult an economist, but it is right there in the law that they must consult an economist. So that is certainly something that was available, but they knew that they had to do it at that point. Thank you, Your Honor. Thank you, Mr. Brown. Ms. Manning? Good afternoon, Your Honors. Good afternoon. With me this morning is co-counsel Russ Eckert. I'm here on behalf of Mississippi Sands, the permittee in this matter, as well as counsel for Illinois Department of Natural Resources, Bill Hardy, who was a peer engineer as an assistant attorney general. In order to resolve this case, Your Honors, you can only look to the statutory framework before you. Unfortunately, with respect to the plaintiffs, they're really arguing a case that is not being argued. This is clearly an action in administrative review. They are seeking to reverse the decision of IDNR that they made granting, pursuant to their duly authorized authority, our client a permit. They captioned it, a petition for administrative review. IDNR responded, pursuant to the Administrative Review Act, by providing the permit record. As you know, you derive your jurisdiction from the Constitution. Article VI of the Constitution. And while they have a right to be here because, as a matter of right, to hear a case that has been dismissed to the Circuit Court, the Circuit Court only can hear what is provided for in law. That's clearly the constitutional parameters, and clearly Judge Schmidt got it right when he looked at this case and reviewed all of the evidence, reviewed everything that the plaintiffs put into the record, the trial record, and said, you know, there's just no jurisdiction here. There is no standing. This is a nature of administrative review. The legislature did not provide for this under the surface mining law, and the administrative review law requires that they be parties. They were not parties at the end of it. The plaintiffs make a lot about it should have been parties, or they were parties. Clearly, they were not parties. Not only were they not parties, if you look, and clearly, I think you all recognize, you have to be, in order to pursue a claim under the Administrative Procedures Act, to review and seek reversal of an administrative decision, as they do here, you have to be a party in the record. What about Mr. Rowan's claim that the non-administrative review counts, that they sought to join at the trial level before Judge Schmidt in saying, hey, we've got common law certiorari and mandamus, et cetera. What about that? I understand that, Justice Steinman. Let's take the writ of mandamus first. That is applicable and could be applicable to the plaintiffs had they filed a separate writ of mandamus claim on the INAPA claim, the Natural Areas Protection Consultation process. But clearly, from all the case law under INAPA, the McHenry County case they studied, the Liston case that went to the Supreme Court, all that is allowed under that law is review on the part of IDNR to do the consultation, which, in this case, IDNR did. What is clear from the INAPA and the case law is they can't reverse the decision that was made if there wasn't a consultation. Here, there was a consultation. But even if there wasn't a consultation, as happened in McHenry, the ordinance in McHenry, the City of Harvard's ordinance, was not overturned. All the court did was say, the DNR will go do the consultation. That's the only remedy in terms of their INAPA claim. Well, isn't that possibly before us here? Not in the context of a petition for administrative review. Can they join additional accounts in the petition, as they sought to do? Potentially, but there would be no remedy in that the department, in fact, did, and it's clear from the record, and Mr. Hardy will speak to this, they did, in fact, do the consultation that's required by Man Davis. So, in other words, you'd be presenting Man Davis to do what they've already done. Go ahead. As to the other counts, the writ of certiorari, for example, as you know, the writ of certiorari is only applicable on a review case if the Administrative Review Act is not written in. And even if the Administrative Review Act is not written in, and you get to use the ancient writ of certiorari, the fact of the matter is you still have to be a party of record. And that's clear from the recent 3rd District case in the Holmes matter. Clearly, you have to be a party of record, whether you appear it as a writ or you appear it under the Administrative Review Law. The fact of the matter here, Your Honors, is that there was really no right under the Surface Mining Act for the parties to achieve party status for the plaintiffs to achieve party status in the context of this proceeding. And there's nothing at all unusual about that. We cite many cases in our briefs where people, citizens, people concerned, are not allowed the right to review the permit. It's simply the legislature has decided that that's not a right that they have. And in the Surface Mining Act, there's not even a right to a hearing on behalf of the public. The only way that a hearing is triggered under this particular act is if the county that's affected requests that hearing. It sounds to me, Counsel, like you're arguing that the legislature is set up as the sole agency to be resolving these questions, the IDNR and Office of Mines and Minerals, to address the request made by your client. And if you can satisfy the IDNR, then that's it. What if, in fact, as here we have plaintiffs who say, oh, this is a big mistake, IDNR messed up, they shouldn't have granted it, they failed to jump through whatever hoops the law requires, and you heard the argument. Is it your position that that doesn't matter? In administrative review, they don't have a right to seek review in the context of the administrative review law, as they do here. Well, let me be more clear. Is there something else they could have done that they didn't? Well, I suppose if they would have filed a suit saying that they were unconstitutional in the manner that they did their job. But that's not the case we have here. They did not sue IDNR or compel them to utilize the experts they think that they needed to use. They have filed this in the context of administrative review, and what they seek is to reverse the decision as to the permit. So, yes, potentially if a department is not doing what it's supposed to do under the law, that's not something that gains somebody who otherwise wouldn't have a right under the administrative review law to have that decision reviewed. A separate action would have to be taken. What would that be? Potentially an action, a suit, that they're unlawfully, they're not providing their duty. Here, there's a lot of remedies that they could seek that aren't the remedies under the administrative review law. Didn't the whole process start with Mississippi Sand applying for a special use permit? Yes. As a matter of fact, in the only way, in the procedure under the surface mining, the county can request a hearing. But oftentimes, the county does its own hearing pursuant to the special use process. And in fact, in this process, that's exactly what LaSalle County had done. And in many of these claims that they're arguing in terms of land use and those kinds of things, those could definitely have been brought to LaSalle County, and probably were. They had a right to appeal the LaSalle County zoning hearing, as a matter of fact, and did not. Does that matter in terms of what they're asking this court to do? I think it does. I think to the extent to which they're arguing equity and there was something wrong and unlawful, the fact of the matter is, they were given their due. They were given the right to participate in the proper process that has been established by the legislature for that particular situation. Was that before the LaSalle County Board? Yes. What should they have done there? Well, the LaSalle County Board did do the special use permit and granted the permit, despite the objections of the citizens. They did show up before the LaSalle County Board? I believe they did. Raised the same objections? I believe they did. And more importantly, the department considered them in its record. The department actually considered the record on the land use issues, on the property value issues. If you look in the record in terms of the permit review document of ID&R, they specifically quoted from LaSalle County and what LaSalle County did. Was there an administrative review available from the decision made by the LaSalle County Board? Yes, pursuant to the county code. That could have gone to the LaSalle County Circuit Court. Correct, and that would have been a proper case. They would have had standing to bring that? Absolutely. Bring the same case? Provided they participated in the public hearing, which I'm sure they could have. Okay, and could they, at that proceeding, have brought the same arguments that they seek to bring now? Yes. Yes, they have some water arguments as well. Those could have been brought pursuant to the Illinois Environmental Protection Act and PDES permit procedure. There is a right for them to appeal that as well. Just as an example as to why plaintiffs don't always have a right to appeal, it used to be that third parties, like plaintiffs here, were not able to appeal even an IEDA and PDES permit. The law has since changed allowing them to do that. We cite, for example, the Citizens Utility case where Justice Toby Berry in the 3rd District said, regardless of how you feel about this, we have to follow the legislative parameters, and here you don't have a right to appeal this permit. Only the person who has the permit has that right. That's clear law in a lot of different contexts. They had to have a law changed in order for them to have that right. So what the plaintiffs really ought to do here is go to the legislature and say, we want to have greater rights in this particular law. As they do, as a matter of fact, in the companion law related to coal mining. IEDA also represents and has authority to issue coal mining permits, and the legislature particularly has a totally different process there, where they do write in the ability for citizens to participate. So your point is, had this been coal mining as opposed to sand mining, the plaintiffs would have had standing? Right. And the legislature is presumed to make the correct decisions when it makes those decisions. Obviously the legislature considered the difference between the impacts in coal versus surface mining, or our clients mining for sand, and those kinds of things. So clearly the statutory constructs are different, and as I said, because administrative review is as provided by law, the court was right to look at what the laws were. When was the Coal Mining Act changed to make that change to permit standing? You know, I don't know that it may be that historically it was always that way. I just know that there's a significant difference, because you only get to even have a hearing under the Surface Mining Act, the one we're here on, if the county triggers it. The Surface Mining Act was after the Coal Mining Act? I believe so, but I don't know that. Well, you're right. I think it's a point of, if the legislature's provided for standing in the Coal Mining Act, then it's, I think, not without significance that it hasn't provided the same thing here. And as you know, you have to look at the Act. You all did that, and you got it right? My line is, as a last recourse, look at the statute. I understand, but recently as well, the 4th District made the decision in Roxanna. And in Roxanna, you were affirmed by the Illinois Supreme Court, the Board of Education versus Roxanna. And Justice Carmichael, in affirming that decision, said something much like Justice Tobey Gary said many years ago, and that is, the wisdom of the rights rests with the responsibility of the legislature. And it's not up to the courts to write in a procedure or a right that the legislature has in this situation. And at this point, I think, unless your honors have any further questions, I do need to split my time with the Department of Natural Resources, Mr. Hardy, but I'm happy to answer any further questions that you might have. I don't see any. Thank you, Ms. Manning. Mr. Hardy? Please. May it please the Court that Counsel William Hardy, on behalf of the IVNR, the Office of Mines and Minerals, and the other agencies present, I agree with everything that's been said by Ms. Manning. This is a very narrow statute. We're talking about a permit here. I can tell you what would have happened if the Department had granted the hearing to the plaintiffs, or if it had, you know, actually allowed them to participate as parties. Mississippi Standard would be coming in and saying, wait a minute, here's what the statute says. And the statute very clearly says that the only request for a hearing can come from the South County, and we clearly do not have a request for a hearing on the permit. Now, this is simply a permit. It's one step in the process. And as Ms. Manning told the Court, there are many other steps in the process, and that's the problem here. What they really want to do is attack everything in this one permit. What are the other steps? I'm not sure I understand. Well, for example, the land use permit, they did have a proceeding in LaSalle County, and there was a consultation pursuant to NAPA where the Department extensively consulted with LaSalle County, as it was required to do, and we laid out in our brief exactly what was required. They identified the areas such as Ernest Marsh, which was affected by NAPA, and they ultimately required, there was an endangered species study done, eventually they required that they get a discharge permit, and that they not discharge any water into Ernest Marsh. So that was another process. I'm sorry, counsel, I may not have been very clear. I was under the impression that you were talking about there are other steps after this one as well. Well, the sand company needs to take. They obviously have to comply with all of the environmental rules. They can't, for example, this is a permit. I'm not sure, I believe they've gotten all of the permits at this point, in which case they can start mining. But that doesn't mean that they can violate all of these laws that the plaintiffs are arguing they're going to violate. Well, to be more clear then, if we were to affirm here, then they can start mining. Assuming that all of the permits have been obtained at this point, and I believe they have. Let me ask you another question. You heard Mr. Rahn argue about that your client made mistakes. The agency made mistakes, there were problems, and for instance the one he mentioned is the statute requires consultation with the economist. You didn't do that. What if he's right? Where is the remedy for that? What action can be taken by someone who claims to be aggrieved under the statute? Well, I don't, again that wasn't a claim that was even made in the trial court that I'm aware of, so I don't know that that requirement is there, and I don't know that it wasn't complied with. The failure to consult with an economist wasn't asserted by the plaintiffs in the trial court? I don't believe that was alleged. Their primary allegation was that we didn't do the consultation under NAPA. Let's assume it's true. Let's assume they alleged it was true. I'm just curious as to what remedy, if any, lies for the plaintiffs if they thought your agency screwed up. Well, NAPA does allow a right of mandamus brought under appropriate circumstances, and I think the problem here is that it's been brought in the administrative review context, clearly, and they don't have a right to bring it in that context. But the consultation that occurred here started way back with LaSalle County. If they filed a mandamus action, we'd probably have to involve LaSalle County as well. They didn't make any of these arguments with the appeal, and the notion that we didn't take any of this into consideration simply ignores the record. We lay out in our statement of facts exactly what happened. Let me ask you this, counsel. I'm not sure I understand what you're saying when you talk about a mandamus action could lie under certain circumstances. They chose, they brought this originally as an administrative review, but then they sought to add counts, including mandamus. Why, if it could lie under some circumstances, why wouldn't it be appropriate to add counts and reject the administrative review count if that's, in fact, incorrect, and let them proceed on the mandamus, if it can lie ever? Well, it can lie. Of course, the mandamus proceeding is very limited. If a consultation didn't occur, then they can order the case to occur. In the McHenry County case, of course, that was a case where they brought it because the local agency, or LaSalle County in this case, didn't do the required consultation with IVNR. And so they sued, and they got an order saying you need to get this consultation. Well, the problem is there's no question that the consultation occurred. It's all over the record. What they're saying is, look, you had to redo completely the consultation when we filed for the permit. But when you look at what we did, obviously it's clear, as we point out in our statement back, that they took all these things into consideration. The NAPA review resulted in the modifications that LaSalle County had to implement, and the requirement that the discharge take place outside or downstream of Ernest Marsh, and so forth. So even if you were to look at that issue, the department clearly did the review, not once, but twice. And if they had a problem with those procedures that were imposed at the LaSalle County level, they had a right to appeal that. So we're simply in the wrong proceeding place. And, you know, the last point that I would make is that we did take into account these things. The Planner's Council says we didn't consider land values. That's not true at all. It's right in the agency's approval document. It says that land values, including the requirement that as part of the permit, enter into property agreements with the neighbors within one-half mile of the permit area, guaranteeing an annual appreciation rate of 3%. There are all of these areas, air quality, pollution, they were all considered. It wasn't completely unsubstantiated. The department, if they violate any of these regulations, they're going to take action. But this is all theoretical. Things that may happen in the future, and there are remedies for that. So unless the court has any other questions, I would ask that the matter be referred. Thank you, Mr. Hardy. Mr. Rowan, do you have any rebuttal? Yes. First, I would just like to address the claim that the consultation, in fact, occurred all over the record, is what counsel said. And that's simply not the case. First of all, there are two possible consultations that the defendants have pointed to. And the first one we've discussed before was the one done by the LaSalle County Court. And that is insufficient as a matter of law to discharge the Office of Mines and Minerals' duty to consult. They both have a duty to consult. If you look at the statute, look at Section 17, it says that each agency has a duty to consult. And if you look to the ID&R regulations, even more tellingly, there is a procedure that the agencies can follow to consolidate consultations between one and the agency. You heard Ms. Fanning's argument that the plaintiffs failed to appear before LaSalle County. Is that right? I do not believe so. They were before LaSalle County Court in those zones. Did you confess the proceedings before the board? No, the plaintiffs have no complaint about the LaSalle County Board consultation. It's only the failure of O&M in particular to consult that the plaintiffs have alleged here and that they rest on here. LaSalle County Board is frankly irrelevant to whether the Office of Mines and Minerals has to consult. Each agency has to consult. And if you don't follow the regulations to consolidate that consultation between one lead agency, that separate duty remains. That's clear from the statute. So LaSalle County Board, that consultation just doesn't matter because O&M is taking a distinct action, and it has to consult as well. And second, in the record, there was a two-sentence email stating conclusively, or stating in a conclusory manner that the consultation has deferred. And allowing that to satisfy the Office of Mines and Minerals' duty to consult would frustrate the purposes of the individual review. We can't believe them? It's not that you can't believe them, Your Honor, but because we're going to emotionally dismiss that all inferences have to be taken in favor of the plaintiffs, given that there are several steps to be taken that are all mandatory in the consultation process, that would be easily documented or were not filed in this court, it's a very reasonable inference that proper procedures were not followed. That we shouldn't believe them is what you're saying. I'm saying only that from the record we cannot tell what happened because easily documented steps were not given to the court. It simply frustrates me. Well, if it's a requirement of the statute that consultation be documented, why doesn't the statute so say? Well, the point really is that the defendants have been hailed into court on the ground that they did not consult. And on that point, all that they've been able to produce is a two-sentence email. They said we did. And you're saying the court can't believe them because they have to document it. The statute doesn't require that, does it? I'm saying it on a motion to dismiss that. Well, the statute requires them to do it, first of all. Not on a motion to dismiss. And they say we did. That's all that's there. But you're saying that's not good enough. Yes, Your Honor. Wouldn't the statute, if I'm writing the statute and I thought I wanted to, and we have other statutes that say, and it shall set forth in particularity how and demonstrate how they would engage in a consultation, as opposed to, yeah, we did that. The real issue here is that we're on a motion to dismiss. And that it's a very reasonable inference that even though that email exists, that the steps that were required or mandatory were not taken. That's a very easy inference. And then I would just like to quickly address two other things.  There's a very specific reason it's drafted the way it is. It's modeled on a federal statute. It is almost word for word. Why does that matter, counsel? The state of Illinois is entirely free to draft its own statutes any way it wishes. Why isn't the point that if they followed the COLE Act and they thought it was a good idea for those circumstances to give parties like the plaintiffs here standing, that when they drafted the Surface Mining Act, they could have followed it? They were entirely free to do that, weren't they? Well, first of all, I am not certain that the Surface Mining Act was later in time to the COLE Act. Well, even if it wasn't, we have two different acts. One provides standing and one doesn't. The one that clearly provides standing is the COLE Act, and this one at best is ambiguous and doesn't identify as the COLE Act does. Why is that? Why did the legislature draw that distinction? Well, the legislature was merely following the federal statute. No, there's no such thing as a legislature merely following the federal law. They're entirely free agents to do whatever they wished. They didn't have to do that. Well, plaintiff's contention is that it is hard to draw inferences from model statutes like that. Here is the question I want you to address. Why don't we have the same provision in the Surface Mining Act granting your clients party status that we have in the COLE Mining Act? They could have done that, and they didn't do it. You heard the argument from Ms. Manning. There's a reason for that. We have to attribute reasons to the legislative action or inaction in this case. She says it's because they didn't want people like your clients to be parties in the Surface Mining Act. What's your response to that argument? Give me a legislative construction that would explain it. Well, plaintiff's response to that argument is that they are parties, that if you look at the statute, it does not define who is a party. No, no, counsel. Let me try once again. The Surface Mining Act clearly doesn't contain the same party language that the COLE Mining Act does. Why not? The section being referred to is one where affected persons can call hearings. Presumably, the legislature thought that the county board called hearings and that other persons could participate by sending letters, doing other things to make themselves parties. The plaintiff's contention is that the legislature was resting on the plain meaning of the term, rather a more technical one that would require them to call a hearing. Thank you, counsel. We'll take this matter under advisement to be in recess.